**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASEE DIVISION**

**HORACE ASH,**

      **Petitioner,**

**v.**                         **Case No. 4:18cv331-WS/CAS**

**MARK S. INCH, Secretary,
Florida Department of
Corrections,**

      **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On July 11, 2018, Petitioner, Horace Ash, a prisoner in the custody of

the Florida Department of Corrections, proceeding pro se under the

mailbox rule, filed a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.  ECF No. 1.  Respondent filed an answer on April 3, 2019, with

record exhibits.  ECF No. 13.  Petitioner was given leave to file a reply,

ECF No. 12, but no reply was filed.

The matter was referred to the undersigned United States Magistrate

Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

Northern District of Florida Local Rule 72.2(B).  After careful consideration

of all the issues raised, the undersigned has determined that no evidentiary

hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the

pleadings and attachments before the Court show that Petitioner is not

entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged by Information on January 2, 2014, in the

circuit court of Leon County, Florida, with felony battery of his girlfriend,

possession of cannabis, possession of Diazepam, and possession of

paraphernalia, all occurring on December 15, 2013.  Ex. A at 29.[1]  An

Amended Information was filed adding a count charging possession of

cocaine.  Ex. A at 30.  Jury trial was held on December 8, 2014, at which

Petitioner was acquitted of felony battery but found guilty as charged of

possession of cannabis, possession of cocaine, possession of Diazepam,

and possession of paraphernalia.[2]  Exs. C, A at 67-68.  Petitioner was

sentenced to a total of eight years in prison followed by two years of

probation.  Ex. A at 72-83.

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through M submitted in conjunction with Respondent's answer.  *See* ECF No. 13.

[2] The controlled substances were reportedly found in a search of Petitioner when officers took him into custody after his girlfriend called 911.  Ex. C at 25-26, 29-37, 54.

On direct appeal from his convictions and sentences, in case number 1D14-5840, his counsel filed an <u>Anders</u> brief.[3]  Ex. E.  Petitioner was granted leave to file a pro se brief but none was filed.[4]  The court affirmed per curiam without opinion on February 17, 2016.  Ex. F.  The mandate was issued on March 15, 2016.  *Id.*  *See* <u>Ash v. State</u>, 185 So. 3d 1237 (Fla. 1st DCA 2016) (table).

On April 12, 2016, Petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850.[5]  Ex. G at 3-28.  An evidentiary hearing was held on September 7, 2016, (Ex. G at 35-73), after which the postconviction court denied the claims.  Ex. G at 33.  Petitioner appealed in case number 1D16-4217 and filed an initial brief.[6]  Ex. H.  The

---

[3] <u>Anders v. California</u>, 386 U.S. 738 (1967) (requiring appointed counsel who finds an appeal to be wholly frivolous to advise the court but submit a brief referring to anything in the record that might arguably support an appeal).

[4] *See* docket, First District Court of Appeal case number 1D14-5840, http://onlinedocketsdca.flcourts.org/DCAResults/CaseDocket?Searchtype=Case+Numb er&Court=1&CaseYear=2014&CaseNumber=5840.

[5] Petitioner raised the following claims in his Rule 3.850 motion: (1) ineffective assistance of counsel (IAC) for failing to rely on a mental health/insanity defense; (2) IAC for failing to depose laboratory analyst Ben Lowzowski; (3) IAC in failure to introduce Lowzowski's report at trial; (4) IAC in failure to advise Petitioner that he could receive consecutive sentences, causing Petitioner to reject a favorable plea offer; and (5) IAC for misadvising Petitioner about the lab results, causing rejection of a favorable plea offer.  Ex. G at 16-26.

[6] The claims on appeal from denial of post-conviction relief were: (1) IAC in failing to raise defense of Petitioner's mental deficiency and inability to assist counsel; (2) IAC in failing to advise Petitioner of consequences of loss at trial when compared to favorable plea offer; and (3) trial court error in refusing to appoint post-conviction counsel and violation of due process at evidentiary hearing.  Ex. H.

appellate court affirmed per curiam without opinion on November 21, 2017, and the mandate was issued on January 10, 2018.  Exs. J, K.  *See* Ash v. State, 236 So. 3d 2017 (Fla. 1st DCA 2017) (table).

On December 12, 2016, Petitioner filed a motion to correct sentence under Florida Rule of Criminal Procedure 3.801(a) for correction of jail credit.  Ex. L at 3-8.  The motion was denied on January 30, 2017, finding that Petitioner was seeking double credit for jail time served and that the sentencing documents and sentencing hearing did not indicate such double credit should be awarded.  Ex. L at 9-37.  Petitioner's appeal in case number 1D17-0583 was affirmed per curiam on April 26, 2017, and the mandate was issued on May 23, 2017.  Ex. M.  *See* Ash v. State, 225 So. 3d 801 (Fla. 1st DCA 2017) (table).

Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court raising the following grounds for relief:

> (1) Ineffective assistance of trial counsel for failing to ensure Petitioner was mentally competent at the time of the offense as well as in preparation for and participation in his trial;
>
> (2) Ineffective assistance of counsel for failing to advise Petitioner of the possibility of consecutive sentences if he proceeded to trial and was convicted, resulting in rejection of a favorable plea offer;
>
> (3) Trial court error in denying legal representation to Petitioner at the post-conviction evidentiary hearing and in denying a full and fair hearing.

ECF No. 1.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts."  Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable."

Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a
> complete bar on federal-court relitigation of claims already
> rejected in state proceedings. . . .  It preserves authority to
> issue the writ in cases where there is no possibility fairminded
> jurists could disagree that the state court's decision conflicts
> with this Court's precedents.  It goes no further.  Section
> 2254(d) reflects the view that habeas corpus is a "guard against
> extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal.
> Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J.,
> concurring in judgment).

*Id.* at 102 (citation omitted).  The federal court employs a " 'highly

deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt.' "  Pinholster, 563

U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

 "Before a federal court may grant habeas relief to a state prisoner,

the prisoner must exhaust his remedies in state court."  O'Sullivan v.

Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner

must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)). Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2015)).

In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993). In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."

Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497 (1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim).  A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice.  *See* Schlup v. Delo, 513 U.S. 298, 327 (1995).  Such a case is "extremely rare."  *Id.* at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

Further, under § 2254(d), "[d]etermining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011).  Credibility and demeanor of a witness are considered to be  questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence.  *Id.*

 For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690).  Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct.  *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' "  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550

U.S. 465, 473 (2007)).  "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  <u>Mirzayance</u>, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard."  *Id.*  Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment.  Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs.  <u>Strickland</u>, 466 U.S. at 697.

### Ground 1: Petitioner's Mental Condition

Petitioner contends that his trial counsel rendered ineffective assistance by failing to determine that Petitioner was competent at the time of the offense and was competent to go to trial and participate in his defense.  ECF No. 1 at 4.  He argues that he informed counsel he was taking psychiatric medication, which should have prompted counsel to seek a medical determination of his competency.  *Id.* at 4-5.  He further argues that counsel made a unilateral determination he was competent, which he should not have done.  *Id.*

An evidentiary hearing was held on this claim.  At the hearing, Petitioner testified that after his arrest, he "told them" he was taking

psychiatric medication and that should have triggered a mental evaluation.[7] Ex. G at 39.  He testified that he took depression medication every day.  *Id.* at 41.  On cross-examination, Petitioner agreed that he knew hitting someone was wrong at the time of the offenses and that he told police that day that he did not hit the alleged victim.  *Id.* at 52.  He also testified that on the date of the offenses he knew that having illegal drugs was against the law.  *Id.* at 53.  He testified that no psychiatrist had ever told him he was insane.  *Id.*

Trial counsel testified at the evidentiary hearing that Petitioner told him he took "psych meds" but did not tell him he was insane and did not tell him he did not know what he was doing at the time of the offenses was wrong.  *Id.* at 59.  Counsel testified that Petitioner never exhibited any indications that the was insane or that he did not appreciate the consequences of his behavior.  *Id.*  Counsel testified:

> **Q**  In the two months leading up to trial, did the defendant at any point tell you that he was insane at the time of the offense back in December of 2013?
>
> **A** He told me he took psych meds, but he didn't tell me he was insane.

---

[7] Petitioner testified that on the date of the offenses he was taking Paxil.  Paxil is a brand name for paroxetine Hcl, which is administered for depression, anxiety and obsessive-compulsive disorder.  *See* https://www.rxlist.com/paxil-cr-drug/patient-images-side-effects.htm#whatis

**Q** Did he ever tell you that he didn't know what he was doing was wrong at the time of the offense or he didn't know the difference between right and wrong, anything like that?

**A** No, ma'am.

**Q** Did he ever exhibit any indications to you that he was insane, didn't appreciate the consequences of his behavior?

**A** No, ma'am.

**Q** Did you ever have any competency concerns about the defendant?

**A** No, ma'am.  I was - - I had - - I spoke with him at length and was, I felt - - I felt like he was competent to stand trial.  He knew as much about - - he was competent to stand trial.

Ex. G at 59.  The post-conviction court denied the claim, stating, "There's no testimony presented here that Mr. Ash was insane at the time of the offense.  There's no testimony here that he was incompetent at the time of trial."  Ex. G at 70.  The appellate court affirmed denial of this claim.  Ex. J.

Under Florida law, to present an insanity defense, the defendant must prove that at the time of the offense he had a mental infirmity, disease, or defect and because of the condition, he did not know what he was doing or its consequences or did not know what he was doing was wrong. § 775.027, Fla. Stat. (2013).  Petitioner testified that at the time of the offense he knew that hitting someone was wrong and knew that possessing illegal drugs was wrong.  Thus, the postconviction court's finding was not unreasonable that Petitioner did not establish he was insane at the time of

the offense and that trial counsel was not deficient in failing to determine he was not insane at the time of the offense.

Nor was the post-conviction court objectively unreasonable in concluding that counsel was not deficient and that prejudice had not been proven in counsel's failure to determine that Petitioner was competent to stand trial.  The federal standard for competency to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him.  *See* Godinez v. Moran, 509 U.S. 389, 396-97 (1993) (citing Dusky v. United States, 362 U.S. 402, 402 (1960); Drope v. Missouri, 420 U.S. 162, 171 (1975)).  "[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges."  Card v. Singletary, 981 F.2d 481, 487-88 (11th Cir. 1992) (quoting U.S. ex rel. Foster v. DeRobertis, 741 F.2d 1007, 1012 (7th Cir. 1984)).  Accordingly, the post-conviction court's denial of Petitioner's claim that counsel should have sought an evaluation solely based on the existence of his depression for which he took medication was not objectively unreasonable.  The Florida Supreme Court has further explained:

> In <u>Groover v. State</u>, 574 So. 2d 97 (Fla. 1991), we reviewed a
> similar issue where the petitioner raised an ineffectiveness of
> counsel claim for counsel's failure to request a psychiatric
> evaluation after it became clear prison officials had
> administered large doses of Mellaril.  *Id.* at 98. The
> postconviction court determined that there had been no
> sufficient evidence of incompetency, deficient performance of
> counsel, or prejudice where trial counsel testified there was no
> genuine issue of sanity or indication the defendant was
> suffering from diminished capacity.  *Id.* at 98-99.  We agreed,
> stating, "Where there is no evidence calling a defendant's
> competency into question, counsel is not bound to seek an
> evaluation. . . ."  *Id.* at 99 (citing <u>Blanco v. Wainwright</u>, 507 So.
> 2d 1377 (Fla. 1987)).

<u>Nelson v. State</u>, 43 So. 3d 20, 29-30 (Fla. 2010).  Thus, under both federal

and Florida law, the administration of medication for mental illness does not

necessarily create a reasonable doubt of defendant's competency or

render the defendant incompetent to proceed.  *See also* <u>Barnes v. State</u>,

124 So. 3d 904, 913 (Fla. 2013); <u>Nelson</u>, 43 So. 3d at 29.  Trial counsel

was not shown to have been deficient for failing to seek an evaluation after

learning that Petitioner took depression medication.  Even if deficiency had

been shown, Petitioner still must establish the prejudice prong of

<u>Strickland</u>.

In a claim such as this, the focus of the prejudice inquiry required by

<u>Strickland</u> is on actual prejudice—whether because of the alleged deficient

performance, the defendant's right not to be tried while incompetent was

violated.  In order to establish prejudice, the movant must "set forth clear

and convincing circumstances that create a real, substantial and legitimate doubt as to the movant's competency." Thompson v. State, 88 So. 3d 312, 312, 319 (Fla. 4th DCA 2012) (quoted in Winslow v. Sec'y, Fla. Dep't of Corr., 3:15cv155-J-32MCR, 2018 WL 3436825, at *5 (M.D. Jul. 17, 2018), *cert. of appealability denied*, No. 18-13525-K, 2019 WL 948355, at *1-*2 (11th Cir. Jan. 24, 2019) (not reported in Fed. Rptr.)).  *See also* Lawrence v. Sec'y, Fla. Dep't of Corr.*,* 700 F.3d 464, 479 (11th Cir. 2012) (holding that to establish prejudice based on counsel's failure to request a competency hearing, a petitioner must show that "there was a reasonable probability that he would have received a competency hearing and been found incompetent had counsel requested the hearing") (emphasis in original).  As the state court found, Petitioner has failed to make this showing.

In sum, Petitioner has failed to demonstrate that the adjudication of the state court resulted in a decision that was contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or an unreasonable determination of the facts in light of the state court record.  Federal habeas relief on Ground 1 should be denied.

## **Ground 2: Possibility of Consecutive Sentences**

Petitioner contends that trial counsel rendered ineffective assistance for failing to advise him of the possibility of consecutive sentences if he proceeded to trial and was convicted, resulting in rejection of a favorable plea offer.  ECF No. 1 at 6.  He also contends that this failing was even more important because, as he argues in Ground 1, he was incompetent at the time.  *Id.* at 6-7.  As previously discussed, he erroneously equates being prescribed psychiatric medication with incompetency and argues counsel never advised him of the possibility of consecutive sentences.  *Id.* at 7.  An evidentiary hearing was granted on this claim.

Petitioner testified at the hearing that counsel did not tell him he could get consecutive sentences if he was convicted at trial.  Ex. G at 45.  He further testified:

> **THE DEFENDANT:**  . . . .  So my assumption was I beat this here because only thing kept worrying about, we just got to beat this domestic violence; you beat this domestic violence, you know what I'm saying.  So I'm thinking everything else going to go along with it. . . .
> . . . .
> **THE COURT:**  So you didn't know somebody could give you consecutive sentences?
> **THE DEFENDANT:** But he be my lawyer.  Don't he supposed to advise me, Judge Hankinson?
> **THE COURT:**  That wasn't my question.
> **THE DEFENDANT:**  No, I didn't know that I could get consecutive sentences.  I'm thinking I'm - - if I beat the

domestic violence, I was going to beat all of it.  It was all criminal - - one criminal episode.  Without me - - without this domestic violence, it would have never came to anything else.

*Id.* at 45-46.  Trial counsel testified at the evidentiary hearing on this claim

as follows:

> **Q**  Did you ever tell the Defendant in this case that the maximum sentence that he could received was only five years?
>
> **A**  No.  I told him, you know, you can get five years for every third degree felony, he's got two of them here; and two misdemeanors.
>
> **Q**  So you would have told him that for every third degree felony, you have a maximum jurisdiction of five years, and you have three third degree felonies?
>
> **A**  That's my normal practice.  I don't recall exactly what we talked about, we talked about a lot of things.  But there would be no reason for me not to tell a client that he would be - - what he was facing.  I don't remember what the plea offer was in this particular case.
>
> **Q**  Did you tell him that if he got off on the domestic violence charge, on the felony battery, that the other charges would just go away?
>
> **A**  No, Ma'am.  I was most concerned with the battery because of the possibility of enhancement, but other than that, I didn't tell him.

Ex. G at 64-65.  The postconviction court denied the claim, finding as

follows:

> Claim four, there's no evidence that the - - that there was a plea offer not conveyed to the defendant.  They conveyed the plea offer to him.  He now contends that had he known that he could get consecutive sentences, he would have taken the plea offer.  Basically his testimony is in hindsight.  If I'd known how this was going to turnout, I would have taken the plea.  I expect

every defendant in prison would say that.  I don't accept the testimony that he would accept the plea offer.

I have to note from looking at Mr. Ash's score sheet, he has many, many prior felony convictions.  I don't know exactly what the number is, I didn't try to add it up.  I find it inconceivable that he doesn't know that it's possible you could get consecutive sentences.  Anyway, I don't find that it's been established that the - - that [defense counsel] gave him mis-advice.

*Id.* at 71-72, 33.

The post-conviction court made credibility determinations that are "the province and function of the state courts, not a federal court engaging in habeas review."  Consalvo, 664 F.3d at 845.  The court found Petitioner's testimony not credible in light of all the circumstances and found trial counsel's testimony to be credible.  Moreover, Petitioner's erroneous, unilateral assumption that if he was acquitted on the charge of beating his girlfriend, the charges of possession of several different controlled substances would disappear is not a basis on which to find that counsel misadvised him or that he did not know that consecutive sentences were a possibility.

Further, as the post-conviction court pointed out, Petitioner had an extensive criminal history and, thus, significant familiarity with the criminal justice system—and his counsel testified that he informed Petitioner he could get five years for each of the felonies.  Petitioner has not

demonstrated that the adjudication of the state court was objectively

unreasonable.  Nor has he demonstrated that the ruling was contrary to or

an unreasonable application of any clearly established federal law as

determined by the Supreme Court or an unreasonable determination of the

facts.  Habeas relief on Ground 2 should be denied.

### Ground 3: Denial of Collateral Counsel for Evidentiary Hearing

Petitioner contends in his last ground that he was denied due process

because he was not appointed an attorney for his post-conviction

evidentiary hearing.  ECF No. 1 at 8-9.  He concedes that he had no

absolute right to appointment of counsel.  *Id.* at 9.  Prisoners do not have a

federal constitutional right to counsel in postconviction proceedings

challenging their convictions.  Pennsylvania v. Finley, 481 U.S. 551, 555

(1987).  Nor do prisoners have a state statutory right to representation in

collateral proceedings in a non-capital case.  *See* § 924.066(3), Fla. Stat.

("A person in a noncapital case who is seeking collateral review under this

chapter has no right to a court-appointed lawyer.").  Under Florida Rule of

Criminal Procedure 3.850(f)(7), counsel "may" be appointed based on

consideration of the adversary nature of the proceedings, the complexity of

the post-conviction claims presented, the defendant's level of intelligence

and education, and the "need" for an evidentiary hearing and for legal research.

When the evidentiary hearing commenced in the trial court, Petitioner complained that he had not been appointed counsel.  The judge noted that counsel had not been requested and if Petitioner was now requesting counsel, the request was denied.  Ex. G at 37-39.  In Petitioner's appeal from denial of post-conviction relief, he included a claim of error in having been denied appointment of counsel for the evidentiary hearing.  Ex. H at 3, 9.  The First District Court of Appeal affirmed without discussion.  Ex. J. Thus, the state court decided this claim on the merits and found no error in the post-conviction court's denial of appointment of counsel under state law.

Moreover, federal habeas relief may not be granted on this claim.  As this Court has explained:

> The state court's denial of Petitioner's motion for appointment of counsel for his evidentiary hearing is a state law claim that does not provide a basis for federal habeas corpus relief. Again, a federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 5 (2010).  "[F]ederal habeas corpus relief does not lie for errors of state law."  Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 7654, 780 (1990)).

The Florida Rules of Criminal Procedure guide the state court in considering whether an individual is entitled to appointment of counsel for seeking post-conviction relief.  *See* Fla. R. Crim. P. 3.850(f)(7).  Notably, this determination is discretionary.  *See* Graham v. State, 372 So. 2d 1363, 1366 (Fla. 1979).  Federal law provides that "[s]tates have no obligation to provide [postconviction] relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well."  Pennsylvania v. Finley, 481 U.S. 551, 556-57 (1987) (citation omitted).

Therefore, the trial court's denial of Petitioner's motion for appointment of counsel for post-conviction proceedings cannot provide a basis for federal habeas relief.  *See* Wright [v. Sec'y, DOC, No. 3:13cv1436-J-39-JBT (N.D. Fla. Mar. 22, 2016)], 2016 WL 1110453, at *2-*4 (denying federal habeas relief for the claim that "the trial court abused its discretion by not granting Petitioner's motion for appointment of counsel for the post conviction evidentiary hearing"); *see also* Carroll v. Sec'y, DOC, 574 F.3d 1354, 1365 (11th Cir. 2009) ("This Court has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief."), *cert. denied*, 558 U.S. 995 (2009).

Melton v. Sec'y, Fla. Dep't of Corr., No. 3:15-CV-47-LC-GRJ, 2018 WL 1178569, at *19-20 (N.D. Fla. Feb. 1, 2018), *report and recommendation adopted sub nom.* Melton v. Sec'y, Dep't of Corr., No. 3:15-CV-47-LC-GRJ, 2018 WL 1176842 (N.D. Fla. Mar. 5, 2018).  *See also* Alston v. Dep't of Corr., Fla., 610 F.3d 1318, 1325-26 (11th Cir.) (recognizing that challenges to a collateral proceeding do not undermine the legality of the conviction itself; therefore, habeas relief is inappropriate), *cert. denied*, 562 U.S. 1113 (2010).

Therefore, the trial court's denial of Petitioner's request for appointment of counsel for the post-conviction evidentiary hearing cannot provide a basis for federal habeas relief and has not been shown to have deprived Petitioner of a constitutional right.  Habeas relief under § 2254 on Ground 3 should be denied.

## Conclusion

Based on the foregoing, Petitioner Horace Ash is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S.

473, 483-84 (2000) (explaining substantial showing) (citation omitted).
Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on June 3, 2019.

s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**